UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN LITTLE, | CASE NO. C07-1317-BHS |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| DAVE OSTER, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed an action pursuant to 42 U.S.C. § 1983. He alleges that while he was a pretrial detainee in the Snohomish County Jail ("Jail") in Everett, Washington, his constitutional rights were violated by Jail officials who placed him in a maximum security wing of the Jail for protective custody. Defendants have filed a motion for summary judgment, supported by declarations and exhibits. Plaintiff has not filed a response to the motion. For the reasons discussed below, the Court recommends that defendants' motion be granted and the complaint and this action be dismissed with prejudice.

///

## BACKGROUND

The declarations submitted by defendants in support of their motion for summary judgment establish the following facts, which are uncontroverted by plaintiff:

Plaintiff was booked into the Jail as a pretrial detainee on March 6, 2007. (Dkt. No. 25 at 2). This was apparently a common occurrence for plaintiff, as he has been booked into the Jail approximately 50 times since 1996. (*Id*. at 1). Upon booking, plaintiff requested that he be placed in protective custody because of death threats that he alleged he had received from other inmates. (Dkt. No. 28, Ex. B). On July 14, 2007, Jail officials transferred plaintiff from the general population in module 5-South to maximum security in module 4-North, in order to afford him greater protection from other inmates.[1]

Module 4-North is the maximum security wing of the Jail and houses several types of inmates: inmates who require isolation due to mental health issues, inmates who have had behavior problems, inmates who require protection, and inmates who have been found guilty of violating the Jail's rules. (Dkt. No. 28 at 2). Because the module is designed for maximum security, the conditions there are more restrictive than in other parts of the Jail. Inmates housed in 4-North are confined in their cells, without cellmates, for 23 hours a day, and cannot watch television or share recreation time with other inmates. (Dkt. No. 24 at 10).

---

[1] The catalyst for the transfer is unclear. Plaintiff wrote in a grievance filed with the Jail that the transfer was prompted by a note from two inmates threatening plaintiff with bodily harm. (Dkt. No. 28, Ex. A). Defendants assert that plaintiff was transferred after he "caused a disturbance in the module 5-South." (Dkt. No. 28 at 1). Regardless of what triggered the transfer, however, the issue here is whether the conditions of confinement in the maximum security wing amounted to punishment against plaintiff. Therefore, any difference in explanation for what prompted the transfer does not preclude summary judgment as the dispute is immaterial to the issues presented herein.

01         On July 24, 2007, plaintiff filed a grievance with the Jail objecting to his placement in

02  module 4-North. (Dkt. No. 28, Ex. A). He stated that two inmates had threatened him with

03  bodily harm and that they should be transferred to the maximum security wing, not him. (*Id*.) He

04  also asserted that he had caused no problems among the inmates and had not requested to be

05  placed in isolation. (*Id*.) Plaintiff did not cite any specific condition in the wing that he found

06  objectionable; rather he objected generally to being housed in 4-North.

07         On July 30, 2007, the Jail's Classification Supervisor, David Oster, denied the grievance

08  and wrote back, saying that "due to conflicts and keep separates," plaintiff could not return to 5-

09  South. (Dkt. No. 28, Ex. A). Mr. Oster also replied that plaintiff had been offered other housing

10  options, other than 5-South and 4-North, but had "declined those options," and therefore by

11  default had chosen to remain in 4-North. (*Id*.)

12         On August 3, 2007, plaintiff refiled the grievance, again objecting to his placement in 4-

13  North but not citing any particular condition of confinement. (Dkt. No. 28, Ex. B). Plaintiff also

14  disagreed with Mr. Oster's assertion that he had rejected other housing options. Again, the

15  grievance was denied and plaintiff remained in the maximum security wing. (*Id*.) Plaintiff filed

16  two additional grievances, both asserting the same objection and both were denied. (Dkt. No. 6,

17  Attachments).

18         After plaintiff was initially placed in 4-North, his housing assignment was reviewed by Jail

19  staff every week for 30 days. (Dkt. No. 27 at 2). After 30 days, the assignment was reviewed

20  once a month. (*Id*.) Plaintiff was released from the Jail on October 19, 2007.[2] (Dkt. No. 25 at

21  ─────────────────

22         [2] Although he was released on this date, plaintiff was booked into the Jail again on December 5, 2007, according to allegations he makes in another pending civil rights case, *Little v. Oster, et al.*, Case No. C08-148-JCC-JPD. (Dkt. No. 8 at 2).

REPORT AND RECOMMENDATION
PAGE -3

2).

Plaintiff submitted the instant complaint on August 23, 2007, pursuant to 42 U.S.C. §1983. (Dkt. No. 1). After being granted leave to proceed *in forma pauperis*, plaintiff's complaint was filed on September 10, 2007. (Dkt. No. 6). Defendants filed their answer on February 11, 2008. (Dkt. No. 18). The Court set discovery deadlines in an Order issued on February 12, 2008. (Dkt. No. 19). In that Order, plaintiff was advised pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-963 (9th Cir. 1998) as follows:

> When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, **you must set out specific facts in declarations, deposition, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.**

(Dkt. No. 19 at 2-3) (emphasis in original).

On May 5, 2008, defendants filed the instant motion for summary judgment. (Dkt. No. 24). The motion was noted for consideration on May 23, 2008. Accordingly, plaintiff's response to the summary judgment motion was due no later than May 19, 2008.   *See* Local Rule CR 7(d)(3). As of the date of this Report and Recommendation, plaintiff has not filed a response and the matter is now ready for review.

## DISCUSSION

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

01 of law." Fed. R. Civ. P. 56(c);*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The

02 Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v.*

03 *O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79

04 (1994).

05     The moving party has the burden of demonstrating the absence of a genuine issue of

06 material fact for trial. *See Anderson*, 477 U.S. at 257. "When the moving party has carried its

07 burden under Rule 56(c), its opponent must do more than simply show that there is some

08 metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead

09 a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*

10 *v. Harris*, __U.S.__, 127 S. Ct. 1769, 1776 (2007) (internal citation and quotation omitted).

11 Conclusory allegations in legal memoranda are not evidence, and cannot by themselves create a

12 genuine issue of material fact where none would otherwise exist. *See Project Release v. Prevost,*

13 722 F.2d 960, 969 (2nd Cir. 1983).

14     In order to sustain a cause of action under 42 U.S.C. §1983, plaintiff must show (I) that

15 he suffered a violation of rights protected by the Constitution or created by federal statute, and

16 (ii) that the violation was proximately caused by a person acting under color of state law. *See*

17 *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff

18 must allege facts showing how individually named defendants caused or personally participated

19 in causing the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.

20 1981).

21     As previously mentioned, plaintiff alleges that defendants violated his constitutional rights

22 when they transferred him from the general population in the Jail to the maximum security wing.

01 Specifically, plaintiff alleges that the conditions of confinement in module 4-North – isolation in
02 a "filthy cell" for 23 hours per day – constituted punishment. (Dkt. No. 6 at 3).  *See Bell v.*
03 *Wolfish*, 441 U.S. 520 (1979).  Liberally construed, plaintiff's complaint also argues that his
04 transfer was unconstitutional because it occurred without a hearing and that it was made in
05 retaliation for his threat to take legal action if he was hurt by other inmates. (Dkt. No. 6 at 3).

06 Defendants argue that their motion for summary judgment should be granted on several
07 grounds, including qualified immunity. (Dkt. No. 24 at 6-7).  However, the Court need address
08 only their argument that plaintiff has failed to meet his burden of showing a genuine issue of
09 material fact.  Because the Court agrees with this argument, it is unnecessary to address
10 defendants' alternative grounds for summary judgment.

11 Under *Bell*, an individual, such as plaintiff, who is accused but not convicted of a crime,
12 cannot be subjected to conditions while detained that amount to "punishment." 441 U.S. at 536-
13 37.  Restrictions amount to punishment when they are either expressly intended to punish or when
14 they are excessive even though they serve a non-punitive purpose. *See Demery v. Arpaio*, 37 F.
15 3d 1020, 1028 (9th Cir. 2004).  A restriction that is reasonably related to a legitimate government
16 goal, such as effective management of the Jail or maintenance of internal security, does not,
17 without more, constitute punishment. *See Bell*, 441 U.S. at 440.

18 Here, defendants have demonstrated that plaintiff's transfer was for his own safety.
19 Further, the isolating conditions of the maximum security wing are reasonably related to the Jail's
20 legitimate goals of maintaining order and protecting inmates from each other.  Plaintiff offers no
21 evidence that the transfer was retaliatory in nature nor that the conditions were excessive given
22 their legitimate purpose.  Plaintiff also fails to produce any evidence to support his assertion that

the cell was "filthy." Further, this claim is undermined by defendants' argument that inmates in 4-North are responsible for cleaning their own cells. (Dkt. No. 24 at 6). Finally, because plaintiff's transfer was motivated by concern for his safety, and not to punish plaintiff, he was not entitled to a hearing beforehand.[3] *See Mitchell v. Dupnik*, 75 F.3d 517, 523-26 (9th Cir. 1996).

Therefore, the Court concludes that plaintiff has not satisfied his burden of showing that a genuine issue of material fact exists regarding his claim that the transfer violated his constitutional rights. Accordingly, the Court recommends that defendants' motion for summary judgment be granted and this action be dismissed with prejudice. In addition, this dismissal should count as a "strike" under 28 U.S.C. § 1915(g) because plaintiff's claims are unsupported by any evidence and are therefore frivolous. A proposed Order accompanies this Report and Recommendation.

DATED this 6th day of June, 2008.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge

---

[3] Even if plaintiff were entitled to due process protections before the transfer, the record shows that on July 15, 2007, one day after the transfer, he met with Terry Bloss, a classification counselor for the Jail, and they discussed where to house plaintiff. (Dkt. No. 27 at 2). A delay of approximately 24 hours in affording plaintiff a hearing on his transfer would appear to be a *de minimis* violation of his due process rights, and not entitle him to relief. *Cf. Hudson v. McMillan*, 503 U.S. 1, 3 (1992) (Eighth Amendment's prohibition against cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force).